848 F.2d 195
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jennifer Linnette WALLACE, Plaintiff-Appellee,
v.
BORG-WARNER CORPORATION, Defendant-Appellant.
 No. 87-5777.
 United States Court of Appeals, Sixth Circuit.
 May 25, 1988.
 
 Before CORNELIA G. KENNEDY and NATHANIEL R. JONES, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Borg-Warner Corporation appeals the denial by the District Court of a judgment n.o.v. or a new trial following a jury verdict for plaintiff Jennifer Wallace in this products liability case decided under Tennessee law. The jury, in a general verdict and special interrogatories, found that a chain manufactured by a subsidiary of the defendant was defective and that this defect caused serious injury to plaintiff's hand when the punch press she was operating descended while her hand was beneath it. The chain in question was being used to operate a safety device that should have forced plaintiff's hands out of the path of the press whenever it descended.
 
 
 2
 Defendant argues that there was no evidence that any defect in the chain caused the injury, that the chain manufactured by defendant was improperly introduced into evidence because there was insufficient indication that it was the chain that was on the press when the accident occurred, and that the amount of the jury's judgment was excessive and so unsupported by the evidence that it indicates that the verdict was given under the influence of passion, prejudice, and caprice.
 
 
 3
 Because defendant has failed to carry its burden on any of these three arguments, we affirm the judgment of the District Court.
 
 
 4
 Proximate Cause: Under Tennessee law, which governs in this diversity case, plaintiff was required to prove by a preponderance of the evidence that the product was defective at the time it left the control of the defendant, and that this defective condition was the proximate cause of plaintiff's injury.
 
 
 5
 A judgment n.o.v. is proper only if, taking the strongest legitimate view of the evidence in favor of the opponent of the motion, allowing all reasonable inferences in that party's favor, and discarding all countervailing evidence, a reasonable mind could not draw the conclusion reached by the jury. The motion must be denied where there is any doubt as to the conclusions to be drawn from the evidence, Holmes v. Wilson, 551 S.W.2d 682, 685 (Tenn.1977).
 
 
 6
 The jury found that the chain manufactured by defendant was defective, and that while the chain had been substantially altered since it was manufactured, that alteration was reasonably foreseeable by defendant, and was not the proximate cause of the injury. The jury found that the chain was a proximate cause of plaintiff's injury. Special interrogatories 1C-G. The jury also found that the chain had been used in a manner reasonably foreseeable by the defendant, that there was no intervening proximate cause of the injury, and that plaintiff had not assumed the risk. Special interrogatories 1H-J.
 
 
 7
 The first issue is whether the breaking of the chain was a proximate cause of the injury. Plaintiff introduced evidence that the chain was found broken immediately after the accident, that the pullout device (the safety device in question here) was properly adjusted, that there did not appear to be anything else wrong with the machine or with the safety device, and that when the broken chain was replaced, the safety device worked properly, even when the press itself was purposely made to fail as it did at the time of the accident. In addition, Dr. Sissom, the Engineering Dean at Tennessee Technological University, testified that the breaking of the chain was a "but-for" cause of plaintiff's injury. We conclude that the jury could reasonably have decided that the plaintiff's injury would not have occurred if the chain had not broken.
 
 
 8
 We turn next to the question of whether plaintiff produced sufficient evidence that the chain was defective. The parties stipulated that a tensile test (or breaking strength test) was conducted on the chain, and that it broke at 3,170 pounds. Plaintiff's expert, Dr. James Wert, the George Sloan Professor of Metallurgy at Vanderbilt University, testified that he was convinced that the failed link that he examined contained a manufacturing defect, known as a quench crack, that appreciably lowered the strength of this particular link and the chain as a whole. Dr. Wert's testimony explained both the basis of this conclusion and the manufacturing process that creates the defect. He told the jury that his examination "clearly indicates that the failed link contained a manufacturing defect regardless of whether this chain broke at the time Jennifer's hand was crushed, or in a test conducted by Borg-Warner sometime after Jennifer's hand was crushed," Joint Appendix at 332. Dr. Wert summarized his conclusions to the jury as follows:
 
 
 9
 (1) the link defendant broke [in its test] contained a quench crack, which is a manufacturing defect; (2) the link that broke at the time Jennifer's hand was crushed was weaker and more defective than the link that defendant broke; (3) the metallurgical concept of low cycle fatigue [advanced by defendant] was not present in this chain; and (4) the non-Morse master links in this chain were not weaker and more likely to break than the Morse links.[1]
 
 
 10
 Id. at 334. We believe Dr. Wert's testimony is sufficient to support a reasonable belief that the chain contained a defect when it left defendant's control.
 
 
 11
 Even if the plaintiff introduced adequate evidence that the chain contained a manufacturing defect, and that the breaking of the chain caused the injury, it was also necessary for her to establish that the defect was more likely than not to be the cause of the chain's breaking. In the circumstances of this case, that question becomes whether other links on the chain, not manufactured by defendant, caused the chain to break. We believe Dr. Wert's testimony also provides a sufficient basis for the jury to conclude that although the chain had been altered since it had been manufactured by the addition of "master links," some of which were not manufactured by defendant, that alteration was not a proximate cause of plaintiff's injury. He stated that it was "significant that the link that broke at 3,437 pounds was a master link of non-Morse manufacture. Moreover, other non-Morse master links did not break at 3,619 pounds. Because the Morse link broke at 3,170 pounds, it cannot be concluded that the non-Morse master links are weaker than the Morse links," Joint Appendix at 330-31.
 
 
 12
 This is enough to support a legitimate inference that if the failure of the chain caused the accident, it was more likely than not that the failure was due to a quench crack in a link manufactured by defendant. First, the jury may have drawn a logical inference that the manufacturing process that created a quench crack in one link could also have created such a defect in another link at the same time. It is consistent with the physical evidence that such a defective link would have broken before the link broken by defendant in its tests. Second, there is no indication that it was a master link, added later, that broke; the evidence is that these links were probably stronger than the regular links. Third, since the chain had some 143 links in one on its pieces, and 31 in the other, of which all but three had been manufactured by defendant, it is more likely than not that the link that broke--which was never recovered--was also manufactured by defendant. We do not believe the jury's decision was based on mere speculation; a reasonable jury could have accepted this evidence as sufficient to establish that it was more likely than not that a link manufactured by defendant was the link that broke.
 
 
 13
 Introduction of chain into evidence: Defendant argues that the District Court improperly admitted into evidence the chain manufactured by defendant, which, as discussed above, included a quench crack. The chain was admitted pursuant to Rule 104(b) of the Federal Rules of Evidence ("Relevancy conditioned on fact").[2] That is, the chain was only relevant under Rule 401[3] if there was sufficient evidence for a reasonable jury to conclude that this chain was indeed the one on the press at the time of the accident. "The judge makes a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition. If so, the item is admitted," Fed.R.Evid. 104(b) advisory committee note. Once all the evidence is in, the District Court withdraws the matter from the consideration of the jury if the jury could not reasonably conclude that the condition was fulfilled. Otherwise the matter is left for the jury to decide. This is precisely what the District Court did.
 
 
 14
 Plaintiff relies on the evidence of Robert Buie, the maintenance supervisor at Dover Products, plaintiff's employer. He testified that he removed the broken chain from the press several days after the accident. He placed this chain in a brown box and placed the box on the top left shelf of a storage cabinet, and that was where he found the chain that he later turned over to defendant's counsel. Although the cabinet had not been locked, Buie testified that he had no knowledge that anyone else had handled the chain, and that he was certain that the brown box from which he removed the chain entered into evidence was the same box into which he had put the chain that he removed from the safety device.
 
 
 15
 This testimony indicates that a reasonable jury could find that the chain introduced into evidence was the chain that had been used to run the safety device at the time of the accident. The jury was able to weigh the credibility of Buie's testimony, and that testimony was subject to vigorous cross-examination. Defendant relies exclusively on the fact that one of the two pieces of chain introduced into evidence was almost six feet long while the other was two and a half feet long. Buie's testimony was that the kind of chain in question was usually around six feet long, but he consistently maintained that this was only a general estimate and that the chains could be longer. He admitted that he would not normally expect to find a chain that was eight and a half feet long attached to the safety device. As the District Court pointed out, neither side introduced evidence about the employer's practice in mounting chains before the accident. Bouie had begun work only a few days before the accident, and could only testify to subsequent practices concerning selecting and cutting chain lengths.[4]
 
 
 16
 We think there is enough to raise a reasonable doubt as to whether the proper chain was in evidence, but that is not the standard we must apply. Nor do we doubt that a reasonable jury could have rejected Buie's testimony, and found that the chain introduced into evidence was not the chain involved in the accident. But the jury, by special interrogatory 1B, found otherwise. The question for us is whether a reasonable jury could believe it was more likely than not that this was, indeed, the chain.
 
 
 17
 The District Court complied with the provisions of the Federal Rules of Evidence, the commentary to which points out that "[i]f preliminary questions of conditional relevancy were determined solely by the judge ... the functioning of the jury as a trier of fact would be greatly restricted and in some cases virtually destroyed. These are appropriate questions for juries," Fed.R.Evid. 104(b) advisory committee note. The District Court's careful instructions, and the special interrogatories that the jury answered, served as a check on any possible abuse by the jury of its right to find the truth. In view of this, and taking, as we must, the strongest legitimate view of the evidence in plaintiff's favor, accepting all reasonable inferences from that evidence, and discarding all opposing evidence, we cannot say that no reasonable person could draw the conclusion that was drawn by the jury.
 
 
 18
 Jury passion or prejudice: Defendant argues that we must overturn the jury's verdict, as the District Court should have, because the jury acted under the influence of "passion, prejudice, and caprice." It argues that the portion of the amount awarded by the jury to compensate plaintiff for lost wages and earning capacity was at such variance with the proof and the weight of the evidence that it clearly shows the influence of passion, prejudice, and caprice.
 
 
 19
 The damage award was divided into three parts. The parties stipulated that plaintiff's medical expenses had been $84,617.20; the jury awarding precisely this amount, evidently choosing not to award any damages for possible future medical expenses. As plaintiff points out, this tends to refute the idea that the jury acted out of improper sympathy for plaintiff.
 
 
 20
 The jury awarded $500,000 for pain, suffering, and disfigurement. Defendant argues that this amount is "patently excessive," and is outside "the range of reasonableness established by the credible evidence (or for this type of injury)." Defendant's brief at 26. It cites no cases for this proposition. Plaintiff cites several cases, although none from Tennessee, that involve much larger awards for analogous injuries. In view of the fact that plaintiff had clearly suffered terrible pain when her hand was completely crushed, had required extensive medical treatment and therapy, and has been permanently disfigured, we cannot say that the District Court was wrong in allowing this aspect of the verdict to stand.
 
 
 21
 The jury also awarded $564,000 for lost wages and earning capacity. This amount was reduced by the District Court to $250,000. Plaintiff does not appeal the granting of defendant's motion for remittitur. Nor is defendant arguing merely that the amount was still too great and should be further reduced. Instead, it is arguing that the jury's award had no basis in fact, and is proof of the jury's improper motivation in reaching its verdict on liability as well as damages. Based on defendant's own figures, we find this argument without merit.
 
 
 22
 Plaintiff was twenty-one years old at the time of the accident, and earning $3.50 an hour. Assuming she would have worked forty hours a week at this wage until she was sixty-five, she would have received around $320,000. Plaintiff testified that she was working a great deal of overtime, and estimated her earnings at about $185 a week, which would come to about $427,000 by the time she was sixty-five. It seems clear that the amount the jury awarded is not so far out of line with these numbers as to prove passion, prejudice, or caprice. It seems more plausible that the jury tried to calculate the effect of increases in plaintiff's wage rate over the course of her life, and of inflation. However, plaintiff failed to present economic evidence of her earning potential and the jury's award did not reduce her future earnings to their present value, causing the District Court to grant the remittitur.
 
 
 23
 The jury charge mentioned present value, but only briefly and without explanation. It would be altogether surprising if a juror not already familiar with the concept had understood the instructions to require a reduction of the amount calculated as future earnings. Insofar as this confusion was error, it was cured by the District Court's action.[5] Defendant's theory of jury prejudice and passion is fatally weakened by the fact that the jury's future damages award, insofar as it was excessive, can be explained by a failure to instruct the jury as to future value, rather than by any improper jury motive.
 
 
 24
 Defendant also argues that the jury was so confused as to the ultimate issues in this case as to require reversal. Defendant argues first that the jury was improperly allowed to decide the issue of foreseeability, citing Dill v. Gamble Asphalt Materials, 594 S.W.2d 719 (Tenn.Ct.App.1979), cert. denied, (Tenn.1980), for the proposition that foreseeability is for the court to decide. However Dill involved the question of whether a duty of care exists towards a negligence plaintiff. We believe no reading of Dill can support defendant's interpretation.
 
 
 25
 Instead, Tennessee law is that "[g]enerally, the question of foreseeability of use is one for the jury, but courts will decide it as a matter of law when reasonable minds could not disagree," Ellithorpe v. Ford Motor Company, 503 S.W.2d 516, 520 (Tenn 1973).
 
 
 26
 Defendant maintains that the jury's misunderstanding of the issue of foreseeability was aggravated by the District Court's refusal to modify the interrogatories "to ask the jury whether the chain that was introduced into evidence ... was in fact the chain that was on the Pullout/Holdout device attached to the press at the time of the Plaintiff's injury," Defendant's brief at 27. We do not understand this argument, in light of the first two interrogatories: "Was the chain involved in the accident manufactured by the Morse Division of Borg-Warner?" and "[w]as the chain in evidence substantially the same chain involved in the accident?" Joint Appendix at 115. We believe this was sufficient for the jury to understand the nature of the questions it was required to decide.[6]
 
 
 27
 Defendant's rather confused argument about jury confusion seems based on the premise that, since there was insufficient evidence on proximate cause, the jury's findings on the closely related issue of foreseeability must have been based on confusion or prejudice. Since we have rejected the premise, we find the argument unpersuasive.
 
 
 28
 The judgment of the District Court is AFFIRMED.
 
 
 
 [1]
 Morse was the Borg-Warner subsidiary that manufactured the chain
 
 
 [2]
 Plaintiff argues that the chain could properly have been admitted unconditionally. We need not address this issue
 
 
 [3]
 Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," and Rule 402 provides that, unless otherwise provided by the Constitution, statutes, or other rules, all relevant evidence is admissible. It is Rule 401 that defines "logical relevance." It is clear that the chain containing a quench crack is logically relevant: its existence obviously makes a fact of major consequence, whether the chain broke and caused the injury, more probable than that fact would be absent that evidence
 
 
 [4]
 We also note that the jury may have thought that Buie had a tendency to underestimate lengths. He testified that he thought a chain was twenty inches long when it was really thirty inches, Joint Appendix at 149
 
 
 [5]
 Defendant apparently failed to object to the form of the instruction
 
 
 [6]
 Defendant also argues that the District Court should have instructed the jury with regard to "foreseeability." There is no indication that defendant objected to the jury charge on the basis, and--especially in view of the clarifying effect of the interrogatories--the failure to so instruct the jury, if it is error at all, does not constitute "plain error."